THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KAREN BARRINGER,

           Plaintiff,                          Civil Action No.
                                            13-CV-12746

vs.

                                            HON. MARK A. GOLDSMITH

COMMISSIONER OF
SOCIAL SECURITY,

           Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. 11) AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DKT. 9)

### I.     INTRODUCTION

This is a Social Security case. Plaintiff Karen Barringer appeals from the final determination of the Commissioner of Social Security denying her application for disability benefits under the Social Security Act, 42 U.S.C. § 1381(a), et seq. Plaintiff asserts that the conditions limiting her ability to work include back spasms, back pain, a spinal condition, emphysema, arthritis, and depression. A.R. at 46, 138 (Dkt. 7). On March 2, 2012, Administrative Law Judge ("ALJ") Joel B. Martinez issued a decision that Plaintiff was not disabled from June 15, 2007, through the date of the decision. Id. at 19. Plaintiff requested a review of this decision, id. at 14, and the Appeals Council denied this request. Id. at 1. At that point, the ALJ's decision became the final decision of the Commissioner. Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 543-544 (6th Cir. 2004). Plaintiff filed a complaint in this Court to contest the ALJ's decision (Dkt. 1). The parties have filed cross motions for summary judgment

(Dkts. 9, 11).[1]  Because the Court concludes that the ALJ's decision applied the correct legal standards and was supported by substantial evidence, the Court will deny Plaintiff's motion for summary judgment and grant Defendant's motion for summary judgment.

## II.   BACKGROUND

Plaintiff was born on November 7, 1961.  A.R. at 117.  She completed two years of college, and worked until July 2009 as a licensed practical nurse ("LPN").  Id. at 138-140. Plaintiff indicated that from November 2006 to July 2009, she worked for two to three days per week, for ten hours per day.  Id. at 162-163.  Plaintiff claims disability commencing on June 15, 2007.  Id. at 117.

### A.   Testimony and Statements

At the hearing before the ALJ, conducted on January 25, 2012, Plaintiff testified that she has severe back spasms, weakness, emphysema, and depression.  A.R. at 46-47.  She testified that she has not had surgery or shots for her back pain, and that she last underwent physical therapy in October 2011.  Id. at 47.  She testified that she has been prescribed Albuterol and Spiriva for her chronic obstructive pulmonary disease ("COPD"), and that she has gone to the hospital several times for this condition.  Id. at 48-49.  Plaintiff stated that her internal medicine physician prescribed her Wellbutrin for her depression, but that she had not been to a psychiatrist in eight or nine years.  Id. at 49-50.

Plaintiff testified that she can walk for ten or fifteen minutes but that she could not walk

---

[1] Although this case was originally referred to Magistrate Judge Mark A. Randon, see notice of referral (Dkt. 3), the Court subsequently entered an Order withdrawing the reference to the Magistrate Judge (Dkt. 12).  In the Order, the Court notes that Plaintiff's motion for summary judgment and Defendant's cross-motion for summary judgment were presently pending on the docket; the Order directed Plaintiff to file a response to Defendant's cross-motion on or before June 2, 2014.  Id.  To date, Plaintiff has not filed a response.  Accordingly, the Court decides this matter based on the administrative record and the arguments in the two briefs that were filed.

thirty minutes without experiencing pain; she does not need an assistive device to walk; she can stand for fifteen or twenty minutes before she has to sit down; she can sit for an hour; and she can lift about twenty pounds.  Id. at 50-52.  Plaintiff stated that she smokes, but is trying to quit. Id. at 52.  Plaintiff testified that she gets up at 5:00 a.m. and drives her husband forty-five minutes to work every morning; she then drives her daughter to school.  Id. at 54-55.  Plaintiff watches television, reads, and naps during the day.  Id. at 55-56.  In the afternoon, Plaintiff picks up her daughter from school and her husband from work, and then sometimes prepares dinner. Id. at 56.  Plaintiff's son cleans the house, and she testified that she tries to help him a little.  Id. at 56-57.[2]  As of December 2011, Plaintiff went to the gym one to three times per week and walked for fifteen or twenty minutes, and would then swim or sit in the hot tub; Plaintiff testified that as of the hearing date, she was attending the gym once or twice per week. Id. at 57-60.

In a function report, Plaintiff stated that she watches television, checks email, sometimes runs errands, and sometimes goes to a bowling alley.  Id. at 174. She cooks meals two to three times per week and does light cleaning.  Id. at 175-176.  She shops for groceries once every two weeks, with her son's help.  Id. at 177.  Plaintiff stated that she plays computer games, sews, crochets, and watches bowling.  Id. at 178.  Plaintiff stated that her back starts to spasm if she lifts heavy loads, such as groceries or laundry.  Id. at 181.

Plaintiff's son, Matthew D. Smith, submitted a third party function report.  Id. at 150. Mr. Smith stated that Plaintiff goes out every day and shops once every two weeks; she can also pay bills, handle a savings account, and follow written and spoken instructions well.  Id. at 153-155.  Mr. Smith stated that Plaintiff watches bowling and racing, but cannot stand or walk for a long time.  Id. at 154-155.

---

[2] As of the hearing date (January 25, 2012), Plaintiff's son was twenty years old.  A.R. at 41. Plaintiff also has a daughter, aged eighteen at the time of the hearing.  Id.

**B.      Medical Records**

  **1.      Treating sources**

    **a)      Back pain and degenerative changes of spine**

  In November 2006, x-rays of Plaintiff's back showed mild degenerative changes of the thoracic spine.  A.R. at 305.  On January 22, 2008, Plaintiff saw her regular doctor, Dr. Monica Leitgeb, D.O., a family medicine practitioner, for complaints of back pain.  Id. at 237.  Dr. Leitgeb reported that Plaintiff stated she had back pain that was bothering her for the last four to five months, which was aggravated by standing; Plaintiff also stated she had back spasms and numbness.  Id.  On examination, Dr. Leitgeb reported tenderness in the parathoracic and perilumbar muscles.  Id.  Dr. Leitgeb diagnosed Plaintiff with chronic thoracic and lumbar back pain, gave Plaintiff a work restriction to work two shifts per week, and referred Plaintiff to Dr. Christina Richardson, D.O., a doctor at a spine clinic.  Id.

  Plaintiff saw Dr. Richardson on January 28, 2008.  Id. at 289.  Dr. Richardson reports that Plaintiff complained of low back pain, id. at 289-290; Dr. Richardson noted that Plaintiff was in no apparent distress, with normal range of motion in the cervical, thoracic, and lumbar spine, some tissue tension in the lumbar para-spinal muscles, normal gait and station, and 5/5 muscle strength.  Id. at 290-291.  Dr. Richardson diagnosed low back pain and prescribed physical therapy, Motrin, and a TENS unit, and instructed Plaintiff to follow up in one month.[3] Id. at 291.

  Plaintiff made a follow-up visit to Dr. Richardson on February 27, 2008.  Id. at 285.  Plaintiff reported that she was in physical therapy, with 50% improvement, no new symptoms, and increased activity.  Id.  Dr. Richardson again diagnosed low back pain, and prescribed continued physical therapy and continued use of the TENS unit, with a follow up in one month.

---

[3] A TENS ("transcutaneous electrical nerve stimulation") unit is a pain control device.  Rubin v. Schottenstein, Zox & Dunn, 143 F.3d 263, 265 (6th Cir. 1998).

Id. at 286.

Plaintiff returned to Dr. Richardson on March 27, 2008 for another follow-up visit.  Id. at 282.  Plaintiff reported continued improvement, with a pain level of zero to one out of ten most of the time, with the worst pain being a three out of ten with activity.  Id.  On examination, Plaintiff had normal range of motion, normal gait and station, and normal muscle strength.  Id. at 283.  Dr. Richardson diagnosed low back pain and muscle spasm, prescribed continued use of the TENS unit and Plaintiff's home program, and instructed Plaintiff to follow up as needed.  Id. at 283-284.

In September 2008, x-rays taken at Sparrow Health Systems showed minimal degenerative change in the spine.  Id. at 304.  On April 3, 2009, Dr. Leitgeb prepared a letter stating that Plaintiff has been struggling with chronic back pain for many years, primarily in the lumbar spine, and that Plaintiff has tried physical therapy, Motrin, and a TENS unit.  Id. at 280. Dr. Leitgeb stated that she is not qualified to "make any type of disability evaluation."  Id.

Plaintiff saw Dr. Richardson on April 30, 2009.  Id. at 276.  Dr. Richardson reports that Plaintiff stated she had been off work and ultimately lost her job, that she could not push the carts at work, that she was trying to "get disability," that she does a thirty-minute workout at the gym up to three times per week, and that her pain is two out of ten at the best, four out of ten currently, and eight out of ten at the worst.  Id.  On examination, Plaintiff had a normal range of motion, no point tenderness or tissue tension on palpation, normal muscle strength, and normal gait and station.  Id. at 278.  Dr. Richardson diagnosed low back pain and prescribed continued TENS unit, continued Motrin use, and recommended physical therapy and a course of pain psychology.  Id. at 278-279.  Dr. Richardson also reported:

> I had a lengthy conversation with the patient today about her request for disability.  I explained to her that when I last saw her a year ago she was

5

> doing well by her report, pain was down and activity was increasing. She
> was instructed to follow-up as needed if her pain was flaring. I have not
> seen her since then so I am not aware of what has transpired in her care
> over the last year. I cannot provide disability now one year later when
> there has been no other follow-up or information.

Id. at 278. Dr. Richardson also stated that based on Plaintiff's assertions that "her pain has apparently persisted and worsened per her report, I would recommend she have an MRI of the lumbar spine." Id.[4]

Plaintiff saw Dr. Leitgeb on May 6, 2011. Id. at 345. Dr. Leitgeb diagnosed Plaintiff with chronic back pain and refilled a Vicodin prescription. Id. at 345-346. Plaintiff stated that she goes to the gym four days per week. Id. at 345.

On June 9, 2011, Plaintiff received a chest x-ray; the results reflected degenerative changes of the lower thoracic and upper lumbar spine. Id. at 370. In October 2011, Plaintiff reported significant decrease in pain with physical therapy. Id. at 360.

### b) Chronic obstructive pulmonary disease ("COPD")

In May 2008, Plaintiff was diagnosed with asthma and prescribed Flovent. A.R. at 257. A chest x-ray performed in September 2008 showed clear lungs, with no pleural effusion or vascular congestion. Id. at 304. In February 2010, Plaintiff was diagnosed with acute exacerbation of asthma and was encouraged to stop smoking. Id. at 351. In October 2010, Plaintiff was diagnosed with COPD exacerbation. Id. at 338. A pulmonary function study performed on October 11, 2010 indicated moderately obstructive ventilator impairment with emphysematous process. Id. at 341. In May 2011, Plaintiff's COPD was assessed as stable, with no recent flares. Id. at 346. In November 2011, a pulmonary function test showed 100% lung capacity, somewhat reduced diffusion capacity, and significant obstructive ventilator defect, with

---

[4] Based on a review of the medical record, it appears that Plaintiff did not receive a follow-up MRI per Dr. Richardson's recommendation. Plaintiff has not argued otherwise.

slightly reduced expiratory flow rates and slightly increased airway resistance compared to October 2010.  Id. at 357.

### c)      Mastitis and cellulitis

In May 2009, Plaintiff was diagnosed with cellulitis and prescribed Vicodin and Keflex. A.R. at 268.  In November 2009, Plaintiff was diagnosed with an inflammatory infection and erythema of her right breast, and was prescribed Cleocin.  Id. at 273-275.

In October 2008, Plaintiff reported pain, tenderness, and thickening in her right breast. Id. at 300.  On May 29, 2009, Plaintiff reported redness and soreness on her right breast, and an ultrasound revealed a lobulated area in her right breast.  Id. at 298.  On July 7, 2009, Plaintiff received an ultrasound of her right breast that showed resolving mastitis and "marked improvement" since the previous exam.  Id. at 296.  In December 2009, Plaintiff received a mammogram and ultrasound that were negative for malignancy.  Id. at 294-295.

### d)      Obesity

Plaintiff is five feet and three and one-quarter inches tall.  A.R. at 256.  In May 2008, Plaintiff weighed 171.4 pounds and had a body mass index of 31.  Id.  At the hearing, Plaintiff reported that she weighed 180 pounds.  Id. at 57.

### e)      Depression

In September 2008, Plaintiff reported depression, fatigue, and insomnia.  A.R. at 236. She was prescribed Wellbutrin.  Id.

### 2.      Non-Treating Sources

As part of the disability determination process conducted by the Disability Determination Service for Social Security Claims, Plaintiff underwent an internal medicine consultative examination conducted by Dr. Elaine Kountanis, a family medicine practitioner.  A.R. at 321,

323. Dr. Kountanis prepared a medical report dated March 8, 2010. Id. at 321. Dr. Kountanis reported that Plaintiff's chest examination was clear to auscultation but with diminished breath sounds at the right lung base. Id. at 322. Dr. Kountanis reported mild right thoracic scoliosis; normal manual muscle testing; no muscle spasm with palpation of the right scapula or left lateral trunk; and normal motor coordination, reflexes, and range of motion. Id. at 322-323. Dr. Kountanis concluded that Plaintiff has chronic pain and risk of pneumonia, and that Plaintiff is able to "do all the orthopedic maneuvers on DDS form 41." Id. at 323.

As part of the disability determination process, Plaintiff also underwent a consultative psychological and psychiatric exam conducted by Dr. Leonard McCulloch, a Michigan Limited Licensed Psychologist. Id. at 325, 332. Dr. McCulloch prepared a consultative psychological and psychiatric report, dated March 12, 2010. Id. at 325. Dr. McCulloch reported that Plaintiff was cooperative, somewhat tense and depressed, and logical and organized. Id. at 325-330. Dr. McCulloch diagnosed Plaintiff with moderate chronic major depression and chronic pain problems, and concluded that her work related abilities "seem severely impacted by her chronic pain conditions and secondarily to a moderate degree by her depression." Id. at 331-332.

At the initial stage of the disability determination process, the State Agency medical consultant, Dr. Robin Mika, opined on April 12, 2010, based on a review of Plaintiff's file, that Plaintiff could frequently lift ten pounds, stand and/or walk six hours in an eight-hour workday, and sit for six hours in an eight-hour workday.[5] A.R. at 216. Dr. Mika further opined that Plaintiff could frequently climb ramps or stairs, occasionally climb ladders, ropes, and scaffolds, should avoid concentrated exposure to extreme cold and to fumes, dusts, gases, and poor

---

[5] Under the Social Security regulations, an ALJ may consider findings and opinions of a nonexamining source, such as a State agency medical consultant. 20 C.F.R. § 404.1527(e)(2).

ventilation, and had no manipulative, visual, or communicative limitations.  Id. at 216-217.

## C.    Vocational Expert

The vocational expert ("VE"), Jane Haile, testified at the hearing.  A.R. at 60-62.  The VE classified Plaintiff's past work as an LPN as medium, skilled employment.  Id. at 61.  The ALJ posed the following hypothetical to the VE:

> Let me give you a hypothetical person of the claimant's age, education, and work history.  Could do light-level work.  Occasional postural limitations.  Occasional ramps and stairs.  No extreme temperatures.  No concentrated dust, fumes, gases.  And simple to moderately complex work.

Id.  The VE testified that this individual could not do Plaintiff's past work, but that the individual would be able to perform work as a first aid nurse, with approximately 87,000 jobs in the national economy and 2,800 jobs in the Michigan economy, and would be able to perform work as a phlebotomist, with approximately 50,000 jobs in the national economy and 1,800 jobs in the Michigan economy.  Id. at 61-62.  On cross-examination, the VE stated that a person who was off-task twenty percent of the time due to pain and depression could not work.  Id. at 62.[6]

---

[6] The administrative record includes medical reports that were not submitted to the ALJ, but that were considered by the Appeals Council ("AC").  A.R. at 5, 35.  These medical records, which are dated from January 25, 2012 through December 5, 2012, were procured after the January 25, 2012 hearing before the ALJ.  See id. at 371-424.  The Sixth Circuit has "repeatedly held that evidence submitted to the Appeals Council after the ALJ's decision cannot be considered part of the record for purposes of substantial evidence review."  Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2001) (citation omitted). Evidence submitted to the AC may, however, constitute grounds for remanding "the case for further administrative proceedings in light of the new evidence, if a claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding."  Id. (citation and quotation marks omitted).  See also Hollon ex rel. Hollon v. Comm'r of Soc. Sec., 447 F.3d 477, 483 (6th Cir 2006) (noting that 42 U.S.C. § 405(g) is "quite explicit as to the standards that must be met before a district court may order a sentence six remand for the taking of additional evidence . . . . [I]t must be shown (i) that the evidence at issue is both 'new' and 'material,' and (ii) that there is 'good cause for the failure to incorporate such evidence into the record in a prior proceeding'" (citations omitted)).  Here, however, Plaintiff has not argued that this evidence constitutes grounds for remand; Plaintiff's entire discussion of this evidence was encompassed in the sentence, "The assessment at (Tr. 393)

### III.    STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court's review is limited to determining whether the Commissioner's decision "is supported by substantial evidence and was made pursuant to proper legal standards." Ealy v. Comm'r of Soc. Sec., 594 F.3d 504, 512 (6th Cir. 2010) (citation and quotation marks omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Lindsley v. Comm'r of Soc. Sec., 560 F.3d 601, 604 (6th Cir. 2009) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). In determining whether substantial evidence exists, the Court may "look to any evidence in the record, regardless of whether it has been cited by [the ALJ]." Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 535 (6th Cir. 2001). "[T]he claimant bears the burden of producing sufficient evidence to show the existence of a disability." Watters v. Comm'r of Soc. Sec., 530 F. App'x 419, 425 (6th Cir. 2013) (citations omitted).

"Disability" is defined as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In determining whether an individual is disabled, the Commissioner applies the following five-step sequential disability analysis: (i) whether the claimant performed substantial gainful activity during the disability period; (ii) whether the claimant has a severe medically determinable impairment; (iii) whether the claimant has an impairment that meets or equals a listed impairment; (iv) whether the claimant, in light of her

---

was also of lumbago, arthritis, COPD, among others." See Pl. Br. at 11 (Dkt. 9). Because Plaintiff has not met her burden of showing that the case should be remanded in light of this evidence, and because the Court may not consider these medical reports for purposes of the substantial-evidence review, the Court does not discuss the evidence submitted to the AC.

residual functional capacity ("RFC") can return to her past relevant work; and (v) if not, whether the claimant, in light of her RFC and her age, education, and work experience, can perform other work in the national economy.  See 20 C.F.R. § 416.920(a) (explaining the five-step sequential evaluation process).  Plaintiff has the burden of proof for the first four steps, but at step five, the burden shifts to the Commissioner to show that "notwithstanding the claimant's impairment, [s]he retains the residual functional capacity to perform specific jobs existing in the national economy."  Abbot v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990) (citations omitted).

## IV.    THE ALJ'S DECISION

The ALJ based his decision on an application of the Commissioner's five-step sequential disability analysis to Plaintiff's claim.  The ALJ's findings were as follows:

- Under Step One, Plaintiff met the insured status requirements through December 31, 2012, and Plaintiff had not engaged in any substantial gainful activity since June 15, 2007.  A.R. at 21.

- Under Step Two, Plaintiff had the following severe combination of impairments: COPD; history of cellulitis; history of mastitis; arthralgias; minimal to mild degenerative changes of the thoracic and upper lumbar spine areas; obesity; and depression.  Id.

- Under Step Three, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment.  Id. at 25.

- Plaintiff had the residual functional capacity ("RFC") to "perform a range of light work as defined in 20 C.F.R. 404.1567(b).  [Plaintiff] can lift twenty pounds occasionally, ten pounds frequently, stand and/or walk six hours and sit six hours in an eight-hour workday.  [Plaintiff] can occasionally climb ramps, stairs, ladders, ropes and scaffolds, balance, stoop, kneel, crouch and crawl.  [Plaintiff] must avoid temperature extremes and exposure to concentrated pulmonary irritants.  [Plaintiff] is limited to the performance of simple to moderately complex work."  Id. at 26.

- Under Step Four, Plaintiff was unable to perform past relevant work.  Id. at 31.

- Under Step Five, Plaintiff had the RFC, age, education, and work experience to perform the following jobs existing in significant numbers in the national economy: First Aid Nurse and Phlebotomist.  Id. at 31-32.

11

Therefore, at Step Five, the ALJ determined that Plaintiff was not disabled.  Id. at 32.

## V.      ANALYSIS

Plaintiff challenges the ALJ's decision on three grounds: (i) the ALJ erred in assessing Plaintiff's credibility; (ii) the ALJ did not properly apply the treating-physician rule; and (iii) substantial evidence does not support the ALJ's conclusion that Plaintiff was not disabled.[7]  For the reasons that follow, the Court rejects these arguments and concludes that, because the ALJ's decision applied the correct legal standards and was supported by substantial evidence, the ALJ's decision must be upheld.

## A.      The ALJ Did Not Err in Performing the Credibility Assessment.

Plaintiff asserts that the ALJ erred as a matter of law in assessing Plaintiff's credibility. Pl. Br. at 6 (Dkt. 9).  Plaintiff argues that the medical record supports her testimony regarding her allegations of pain.  Id. at 11.   Defendant responds that Plaintiff has waived any argument as to credibility, because Plaintiff does not identify any specific factor going to credibility that the ALJ failed to consider.  Def. Br. at 15 (Dkt. 11).

As an initial matter, the Court agrees with Defendant that Plaintiff's invocation of the issue of credibility, without analysis of this issue, is insufficient to squarely raise an argument that the ALJ erred in assessing Plaintiff's credibility.  Under Sixth Circuit law, "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention an argument in the most skeletal way, leaving the court to put flesh on its bones."  McPherson v. Kelsey, 125 F.3d 989, 995-996 (6th

---

[7] The Court notes that, as explained further below, Plaintiff does not squarely raise and develop her arguments as to credibility and the treating-physician rule.  Regardless, the Court concludes that the ALJ's discussion of Plaintiff's credibility and of the treating-physician opinions applied the correct legal standards and was supported by substantial evidence.

Cir. 1997) (citations and quotation marks omitted).  Although Plaintiff cites many pages of law on credibility determinations, Plaintiff does not raise specific arguments as to the ALJ's credibility discussion; Plaintiff states only, "[Plaintiff's] medical record supports her testimony and for the ALJ to indicate that her testimony is not credible is clearly in error."  Pl. Br. at 11. "The Court is under no obligation to scour the record for errors not identified by the claimant." Pawloski v. Comm'r of Soc. Sec., No. 13-11445, 2014 WL 3767836, at *6 (E.D. Mich. July 31, 2014) (citations and quotation marks omitted).

Regardless, the Court has carefully reviewed the ALJ's thorough explanation of the credibility assessment, and as explained below, the Court concludes that the ALJ properly applied the case law and regulations governing credibility determination, and that the ALJ's findings as to Plaintiff's credibility were supported by substantial evidence.

As summarized by the Sixth Circuit, the following legal standards govern an ALJ's credibility determination:

> It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. However, the ALJ is not free to make credibility determinations based solely upon an "intangible or intuitive notion about an individual's credibility." Rather, such determinations must find support in the record. Whenever a claimant's complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints "based on a consideration of the entire case record." The entire case record includes any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record. Consistency of the various pieces of information contained in the record should be scrutinized. Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect.

13

> Social Security Ruling 96-7p also requires the ALJ explain his credibility determinations in his decision such that it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." In other words, blanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence.

Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 247-48 (6th Cir. 2007) (citations and footnote omitted).   Further, the Sixth Circuit has explained that in evaluating a claim of disability premised on subjective allegations of pain,

> there must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain. The standard does not require, however, objective evidence of the pain itself.

Duncan v. Sec'y of Health & Hum. Servs., 801 F.2d 847, 853 (6th Cir. 1986) (citations and quotation marks omitted).   See also 20 C.F.R. § 404.1529(c) (setting forth guidelines for analyzing subjective claims of pain).

In light of this governing law, the Court turns to the ALJ's assessment of Plaintiff's credibility in her subjective assertions of pain.   In a three-page, single-spaced section, the ALJ explained his conclusion that while Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; . . . [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment."   A.R. at 28.   The ALJ concluded that the objective record evidence does not support Plaintiff's subjective limitations and allegations of pain and other symptoms, for the following reasons: (i) the treatment record does not show evidence of long-term pain or disuse or acute pain at examinations, and Plaintiff

14

has not been referred for surgery; (ii) although Plaintiff apparently attempted to solicit disability opinions from her treating physicians, Dr. Richardson noted that when she last saw Plaintiff, Plaintiff was doing well, with increased activity, and that Plaintiff had not followed up for a year, and that Dr. Richardson could therefore not provide a disability opinion; (iii) the medical record shows large gaps in treatment; (iv) Plaintiff has failed to comply with prescribed treatment, and in particular has failed to give up smoking; (v) Plaintiff's daily activities are not consistent with her allegations of pain; (vi) Plaintiff contradicted herself at the hearing with respect to her daily activities; and (vii) there is no evidence of a psychogenic somatoform disorder. Id. at 28-30.

In this analysis, the ALJ thoroughly discussed evidence from the medical record and Plaintiff's testimony in his analysis of the objective basis for Plaintiff's allegations of pain; he also specifically explained his reasons, listed above, for discounting Plaintiff's credibility, in conformance with Sixth Circuit precedent and Social Security Ruling 96-7p. Accordingly, the ALJ applied the correct legal standards in rendering his credibility assessment.

Further, the ALJ's credibility determination was supported by substantial evidence in the record. Specifically, although objective medical record evidence indicates that Plaintiff has mild degenerative changes of the spine, see A.R. at 305, 370, there is a lack of objective medical evidence indicating that the condition or its symptoms is severe enough to support Plaintiff's assertions of the extent of her pain. See Duncan, 801 F.2d at 852-853 (requiring that subjective evidence of pain be supported by objective evidence confirming the severity or extent of the pain). Indeed, as the ALJ noted, the record indicates that Plaintiff experienced substantial improvement with physical therapy, A.R. at 285, 282; that Plaintiff had minimal point tenderness or tension on palpation, id. at 278; and that several examinations reported no abnormal musculoskeletal findings, id. at 278, 283. Moreover, Plaintiff's self-reported activities of driving

for forty-five minutes at a time, going to the gym one to three times a week, and occasionally running errands, cooking meals, and shopping for groceries undermine Plaintiff's self-reported functional limitations.  Id. at 55, 57-60.  It is also notable that Plaintiff's treating physician, Dr. Richardson, declined to opine as to Plaintiff's claimed disability on the ground that Plaintiff, who had been improving when the physician last saw her, had not followed up in a year.  Id. at 278. Accordingly, the medical record and Plaintiff's self-reported activities provide substantial evidence supporting the ALJ's credibility determination.

This conclusion is not altered by the fact that several physicians diagnosed Plaintiff with chronic low back pain and muscle spasms.  A review of these medical records makes clear that these diagnoses were premised largely, if not entirely, on Plaintiff's self-reported allegations of pain.  See id. at 237, 290-291, 283-284, 345-346.  It is established that a medical report that merely repeats a claimant's subjective complaints is not objective medical evidence.  See Young v. Sec'y of Health & Hum. Servs., 925 F.2d 146, 151 (6th Cir. 1990).  Moreover, a mere diagnosis, without more, says nothing about the severity of a condition.  See Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of arthritis, of course, says nothing about the severity of the condition." (citation omitted)).   For these reasons, the physicians' diagnoses of low back pain do not alter the Court's conclusion that the ALJ's decision to discount Plaintiff's credibility as to the extent of her pain is supported by substantial record evidence.

The Court, therefore, rejects Plaintiff's argument that the ALJ erred in his credibility assessment.

**B.     The ALJ Properly Applied the Treating Physician Rule.**

Plaintiff's brief cites language from cases and regulations setting forth and applying the

treating-physician rule.  Pl. Br. at 12-14.  However, aside from an assertion in the heading of the brief that the ALJ "erred . . . by failing to properly evaluate the medical records of evidence," Plaintiff does not actually argue that the ALJ violated the treating-physician rule, or explain in what way she believes the ALJ failed to properly apply the treating-physician standards. Defendant argues that Plaintiff waived any treating-physician argument, Def. Br. at 15, and the Court agrees.  See McPherson, 125 F.3d at 995-996.  Regardless, the Court has carefully reviewed the ALJ's decision and, for the reasons that follow, concludes that the ALJ properly applied the treating-physician rule.

The treating-physician rule provides for the amount of deference a decision-maker must give to the opinions of the claimant's treating physician.  Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 406 (6th Cir. 2009). The treating source's opinion must be given "controlling weight" if the treating source opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2).  If the ALJ does not give the treating physician's opinion controlling weight, the ALJ must (i) determine how much weight to assign to the treating source opinion, and (ii) support its determination of how much weight to give with "good reasons."  See Friend v. Comm'r of Soc. Sec., 375 F. App'x 543, 550 (6th Cir. 2010); Smith v. Comm'r of Soc. Sec., 482 F.3d 873, 875 (6th Cir. 2007).  For non-treating sources, the ALJ must "weigh[] these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling."  Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 376 (6th Cir. 2013) (citations omitted).

Here, the ALJ referenced several physician opinions in his decision.  He explained that he gave limited weight to the opinion of the consultative examiner, Dr. Kountanis, who diagnosed

Plaintiff with a chronic pain disorder; the ALJ noted that the diagnosis appeared to be based on Plaintiff's subjective complaints.  A.R. at 22.  Regarding functional limitations, the ALJ stated that he relied on the opinion of the State Agency medical consultant, Dr. Mika, in finding that Plaintiff remains capable of performing a range of light work.  Id. at 26.  The ALJ explained that he gave limited weight to Dr. Leitgeb's opinion, provided in January 2008, that Plaintiff could work only two eight-hour shifts per week; the ALJ explained that this opinion appeared to be based on Plaintiff's subjective complaints and was not supported by the longitudinal treatment record.  Id. at 26-27.  Finally, the ALJ explained that he gave limited weight to the opinion of the consulting psychological examiner, Dr. McCulloch, because the ALJ determined that there was no medically determinable chronic pain disorder.  Id. at 27.

In accordance with the treating-physician rule, the ALJ expressly explained the amount of weight he gave to the opinion of the treating physician, Dr. Leitgeb, and gave good reasons for doing so.  See, e.g., Cutlip v. Sec'y of Health & Hum. Servs., 25 F.3d 284, 287 (6th Cir. 1994) (affirming the ALJ's assignment of limited weight to two favorable treating physician opinions, where there was evidence of subsequent improvement and where the treating physician opinions were contradicted by the claimant's self-reported daily activities of driving a car, shopping, and cooking).  Plaintiff has not identified — and the Court is not aware of — any other treating physician opinions as to Plaintiff's functional limitations, aside from Dr. Leitgeb's January 2008 opinion.  As previously noted, Dr. Richardson declined to give an opinion regarding Plaintiff's claimed disability.

Further, because there was no controlling treating physician opinion as to Plaintiff's functional limitations, the ALJ properly weighed and analyzed the opinions of the consultative examiners and the state agency medical consultant in making a finding as to Plaintiff's RFC.  In

18

discussing these opinions, the ALJ appropriately considered the evidence supporting the opinions and the extent to which the opinions were consistent with the medical record, and explained the amount of weight assigned to each opinion.  See A.R. at 26-29.

For these reasons, the Court concludes that the ALJ properly applied the treating physician rule.  Plaintiff has not shown, or argued, otherwise.

**C.     Substantial Evidence Supports the ALJ's Determination of Plaintiff's Functional Limitations.**

Plaintiff argues that the question the ALJ posed to the VE did not accurately describe Plaintiff and, therefore, the VE's testimony at the hearing should not constitute substantial evidence.  Pl. Br. at 10.  Plaintiff asserted that the VE testified that a person who was absent ten days per year, or off task twenty percent of the time, would not be able to hold employment.  Id. at 12.  Plaintiff contends that her ability to engage in substantial gainful activity is severely limited due to her physical conditions, and that she would only be able to engage in substantial gainful activity by enduring great pain.  Id. at 14.

In response, Defendant construes Plaintiff's challenge to the hypothetical posed to the VE as a challenge to the ALJ's RFC finding.  Def. Resp. at 13.  Defendant argues that Plaintiff may not be found to be disabled based solely on her statements, and that the objective medical signs regarding Plaintiff's back impairment were normal.  Id. at 14.  Defendant contends that the ALJ was not required to include limitations that were unsupported by the record in the hypothetical to the VE.  Id. at 16.  Defendant argues that Plaintiff cites no evidence that she would only be able to work by enduring great pain.  Id.

As an initial matter, because the limitations incorporated in the hypothetical to the VE track the ALJ's RFC finding, the Court construes Plaintiff's argument as a general challenge to the ALJ's findings as to Plaintiff's functional capacity.  In the ALJ's RFC determination, the

ALJ relied on (i) the opinion of the state agency consultant, Dr. Mika, that Plaintiff retained the ability to do a range of light work, (ii) the lack of treatment for mental conditions, (iii) Plaintiff's self-reported abilities and activities of daily living, (iv) the lack of evidence of severe pain or severe spinal degeneration in the medical records, (v) the gaps in treatment, (vi) the refusal of Plaintiff's treating physicians to provide opinions relating to Plaintiff's claimed disability, (vii) Plaintiff's failure to comply with prescribed treatment, and (viii) the ALJ's finding that Plaintiff was not a credible witness.  A.R. at 26-30.

The Court concludes that substantial evidence in the record supports the ALJ's determination that Plaintiff could perform a range of light work with limitations as to lifting, climbing, and exposure to extreme cold, dust, and irritants.  First, although Plaintiff relies primarily on her subjective allegations of pain to support her contention that her chronic pain would preclude her ability to work, see Pl. Br. at 10-11, the Court has concluded, above, that the ALJ permissibly discounted Plaintiff's credibility with respect to the extent of her self-reported pain.

Second, Plaintiff relies on Dr. Leitgeb's January 2008 diagnosis of chronic back pain to support her claim of chronic severe pain, see Pl. Br. at 11, but a diagnosis, without more, says nothing about the severity of Plaintiff's pain or its functional limitations.  See Higgs, 880 F.2d at 863; see also Hill v. Comm'r of Soc. Sec., 560 F. App'x 547, 551 (6th Cir. 2014) ("[D]isability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it." (citation omitted)).  Moreover, although Dr. Leitgeb further opined as part of her January 2008 report that Plaintiff was limited to two eight-hour shifts per week, the ALJ properly explained why he did not give significant weight to Dr. Leitgeb's opinion regarding the functional limitations stemming from this claimed condition.  A.R. at 27.  Notably, Plaintiff's pain showed

20

subsequent marked improvement with treatment and physical therapy, see A.R. at 285, 282, 360, which undercuts the claimed severity of the limiting effects of her back pain.  See Torres v. Comm'r of Soc. Sec., 490 F. App'x 748, 754 (6th Cir. 2012) (noting that improvement of a condition with medication and treatment weighs against the claimed severity of the condition).[8]

Further, although there is some evidence in the record that Plaintiff did experience some back pain, the record evidence supports the conclusion that any functional limitations stemming from such pain were minimal.  Plaintiff consistently had normal musculoskeletal examinations, with normal range of motion, strength, and gait.  A.R. at 290-291, 283, 278.  The state agency examiner, Dr. Mika, opined that Plaintiff could perform a range of light work, and the consultative examiner, Dr. Kountanis, opined that Plaintiff could perform all orthopedic maneuvers identified on the DDS form.  Id. at 216-217, 323.  Plaintiff's self-reported daily activities, which include driving for a total of more than an hour per day and going to the gym up to three times per week, id. at 55-60, also provide support for the ALJ's decision.[9]  Furthermore, as the ALJ pointed out, the unexplained gaps in treatment of a year or more indicate that Plaintiff's pain was not debilitating.  See White v. Comm'r of Soc. Sec., 572 F.3d 272, 283-284 (6th Cir. 2009) (concluding that a "significant and unexplained gap in treatment," with no evidence in the record explaining the failure to seek treatment, may indicate an alleviation of

---

[8] The Court addresses the limited weight the ALJ assigned to Dr. Leitgeb's opinion more fully in the discussion of the ALJ's application of the treating-physician rule, supra.

[9] Plaintiff cites, without analysis, Walston v. Gardner, 381 F.2d 580, 586 (6th Cir. 1967), which concluded, "The fact that the appellant can still perform simple functions, such as driving, grocery shopping, dish washing and floor sweeping, does not necessarily indicate that this appellant possesses an ability to engage in substantial gainful activity."  The Court does not conclude that Plaintiff's self-reported daily activities, in and of themselves, demonstrate an ability to work; nevertheless, these activities, when considered in conjunction with the medical evidence of record, provide substantial evidence supporting the ALJ's determination of Plaintiff's functional capacity.

symptoms).  For the reasons discussed here, the ALJ's determination as to Plaintiff's functional limitations was supported by substantial evidence, and the Court rejects as unsupported Plaintiff's argument that she would be able to perform substantial gainful activity only by enduring great pain.

Plaintiff also argues that the VE testified that a person who was off task twenty percent of the time would not be able to hold employment.  Although the VE did provide this testimony, Plaintiff has not shown that the testimony is applicable to her; Plaintiff does not point to evidence that would support the conclusion that she is off task for twenty percent of the time.  Nor was the ALJ under an obligation to consider or incorporate limitations into the hypothetical that are unsupported or determined to be not credible.  See Casey v. Sec'y of Health & Hum. Servs., 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by a finder of fact." (citation omitted)).  Accordingly, the Court rejects Plaintiff's argument as to the hypothetical posed to the VE.

Finally, the Court notes that both parties, in their briefs, focus on Plaintiff's spinal impairments and claims of related pain.  Plaintiff spends only one sentence referencing her other medical impairments.  See Pl. Br. at 11 ("The assessment . . . was also of lumbago, arthritis, COPD, among others.").  Regardless, the Court has reviewed the record and the entirety of the ALJ's decision, and the Court concludes that the ALJ's determination as to the minimal functional limitations stemming from the conditions of COPD, mastitis, cellulitis, obesity, and depression is supported by substantial evidence.

Regarding COPD, Plaintiff's pulmonary function tests consistently showed a generally stable condition with only slightly altered diffusion capacity, flow rates, and airway resistance.

A.R. at 341, 346, 357.   Moreover, Plaintiff's failure to stop smoking — contrary to her physicians' repeated recommendations — weighs against finding severe limitations from her COPD.  See, e.g., Sias v. Sec'y of Health & Human Servs., 861 F.2d 475, 480 (6th Cir. 1988) (concluding that the claimant's continued smoking habit, in contravention of his physician's prescriptions, was "not consistent with [the habits] of a person who suffers from intractable pain . . . .").   Regarding mastitis and cellulitis, the medical record indicates that these conditions improved rapidly, and the most recent reported tests were negative for any malignancy.  A.R. at 298, 296, 294-295.  Further, as the ALJ pointed out, Plaintiff is only mildly obese, and although she has reported episodes of depression, she has not been treated by a psychiatrist in at least eight or nine years.   Id. at 256, 236, 49-50.   These medical records, along with the previously-discussed consultative examiner opinions as to her functional limitations, constitute substantial evidence supporting the ALJ's RFC determination with respect to her COPD, mastitis, cellulitis, obesity, and depression.

For these reasons, the Court rejects Plaintiff's argument regarding the ALJ's determination of her functional limitations.

## VI.   CONCLUSION

Because the ALJ's decision applies the correct legal standards and is supported by substantial evidence, the Court denies Plaintiff's motion for summary judgment and grants Defendant's motion for summary judgment.[10]

---

[10] Throughout this Opinion, the Court has referenced the confusing and undeveloped nature of many of Plaintiff's arguments.  In a prior Social Security case in this District in which counsel for Plaintiff — Richard J. Doud — represented the claimant, Chief Judge Gerald E. Rosen noted, "[T]his reliance on conclusory assertions and absence of developed argument has become the calling card of Plaintiff's counsel in a number of recent Social Security cases, and nearly every Magistrate Judge in this District has expressed this concern with the work product of Plaintiff's counsel."  Fielder v. Comm'r of Soc. Sec., No. 13-10325, 2014 WL 1207865, at *1 n.1 (E.D.

SO ORDERED.

Dated: August 18, 2014                    s/Mark A. Goldsmith
       Flint, Michigan                    MARK A. GOLDSMITH
                                          United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 18, 2014.

                                          s/Deborah J. Goltz
                                          DEBORAH J. GOLTZ
                                          Case Manager

---

Mich. Mar. 24, 2014) (collecting cases).  Chief Judge Rosen warned Plaintiff's counsel that "[i]n light of this lamentable record of filing one-size-fits-all briefs and inviting the Judges of this District to formulate arguments and search the record on his clients' behalf, Plaintiff's counsel is strongly cautioned that this Court will carefully examine his submissions in future suits to ensure that they advance properly supported arguments that rest upon (and cite to) the facts of a particular case.  Failure to adhere to these standards will result in the imposition of sanctions and possible referral of counsel for disciplinary proceedings."  Id.  Plaintiff's motion in the instant case was filed prior to Chief Judge Rosen's order and, therefore, any consideration of an imposition of sanctions premised on that order would be inappropriate.  Regardless, Plaintiff's brief in this case is deficient.  The brief repeatedly refers to Plaintiff, a woman, as "him"; the brief lists several impairments that the ALJ purportedly found, which the ALJ never, in fact, discussed, see Pl. Br. at 10; and the brief contains approximately seven pages of apparently boilerplate legal citations and approximately two and a half pages constituting a discussion of facts and arguments particular to this case.   Furthermore, in contravention of the Court's scheduling order (Dkt. 12), Plaintiff never filed a response brief.  Plaintiff's counsel's failure to set forth a full discussion of relevant facts and to present developed and substantive arguments on behalf of his client is, to say the least, troubling.

24